**LAW OFFICES OF PERRY C. WANDER**
Perry C. Wander (SBN: 102523)
9454 Wilshire Boulevard, Penthouse
Beverly Hills, California 90212
Telephone: 310-274-9985
Facsimile: 310-274-9987
Email: pcwlaw@msn.com

Attorney for Plaintiff Sydney Roper

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYDNEY ROPER,<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA'S SECRET STORES BRAND MANAGEMENT, LLC<br><br>Defendant. | CASE NO.:<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES;**<br><br>**1. VIOLATION OF CALIFORNIA CIVIL CODE § 3344;**<br>**2. COMMON-LAW APPROPRIATION OF NAME; AND**<br>**3. BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. A model's consent has limits, even when the advertiser has far greater resources. Plaintiff Sydney Roper alleges that Victoria's Secret purchased a limited, unrecognizable parts-model appearance, then used approximately 95 percent of her face in an Instagram perfume advertisement despite an express restriction to less than 30 percent. When her agency demanded an additional $2,500 for the expanded use and a $500 agency fee (20 percent of $2,500), Victoria's Secret did not respond, removed the linked advertisement, and offered no apology. Taking an advertisement down does not pay the model for the use already made.

2. Roper is an established professional model whose livelihood depends on the commercial value of her likeness and her ability to control its use. Over approximately six years of modeling for Peter Millar's G/FORE brand, part of the Richemont luxury group, she served as a principal recurring model and became one of G/FORE's recognizable faces. Plaintiff alleges that Richemont prominently features her photograph on its corporate website to represent G/FORE. Her recognizable face is a professional asset developed through years of work, with value distinct from the limited body-parts appearance Victoria's Secret negotiated.

Defendant Victoria's Secret Stores Brand Management, LLC and IB US Retail Holdings, Inc. expressly engaged Plaintiff as an "Unrecognizable/Parts Model." Its representative confirmed that the contemplated appearances would remain unrecognizable and that partial facial use would be less than 30 percent. Those restrictions defined the rights Defendant obtained. A sophisticated advertiser that negotiates a facial-use limit cannot treat that limit as optional after the camera stops rolling.

3. Nevertheless, Defendant published an Instagram perfume advertisement depicting substantially all of Plaintiff's face, which Plaintiff estimates at approximately 95 percent. Her visible eye, nose, lips, and facial features made her recognizable notwithstanding partial shadow.

4. The challenged use exceeded both the numerical facial-use restriction and the independent promise that she would remain unrecognizable.

5. Defendant obtained no additional authorization before publishing that recognizable facial appearance and paid no additional compensation for it. Plaintiff's agency then demanded an additional $2,500 usage fee and a $500 agency fee (20 percent of $2,500). Defendant did not respond to the demand and removed the linked Instagram video, leaving Plaintiff uncompensated for the expanded use that had already occurred.

6. The unequal power in this transaction is concrete. Victoria's Secret controlled the campaign's production and publication and had the resources to secure the rights its advertisement required. Roper depended on negotiated usage limits to protect her income and professional identity. After Defendant exceeded those limits, she had to discover the use, invoke her agency's assistance, and pursue compensation against the company that had already received the advertising benefit.

7. Defendant's removal without payment left the cost of enforcing the bargain with the model. For an individual model, the expense of pursuing an unanswered agency demand can become a practical obstacle to compensation. Treating removal as the complete answer would allow an advertiser to receive unauthorized commercial value and leave the model unpaid unless she can afford to enforce her rights. Corporate bargaining power does not enlarge a model's consent.

8. The sequence alleged here supports the inference that Defendant treated enforcement as Plaintiff's problem: publish the recognizable image, receive its advertising value, and remove it without payment when challenged. A model should not have to finance a lawsuit to make a negotiated usage limit meaningful. Plaintiff's successful career does not eliminate the disparity between an individual model and the enterprise controlling the advertisement.

9. Plaintiff seeks accountability for the unauthorized commercial use of her likeness and the breach of the negotiated restrictions: compensation for the injury caused, profits attributable to the

unauthorized use where recoverable, and the fees, costs, and other relief authorized by law. The wrong alleged is the use of rights Defendant never obtained; removal stopped the challenged publication but did not erase the completed use or pay for it.

## PARTIES

10. Plaintiff Sydney Roper ("Plaintiff") is, and at all relevant times was, an individual residing in and domiciled in the State of California. Plaintiff is a professional model whose name, image, likeness, identity, and persona possess substantial commercial value and have been used in national and international advertising campaigns. Plaintiff earns her livelihood by licensing the commercial use of her image and has the exclusive right to control, authorize, and receive compensation for the commercial exploitation of her identity.

11. Defendant Victoria's Secret Stores Brand Management, LLC ("Victoria's Secret") is, and at all relevant times was, a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in California. Victoria's Secret maintains its principal place of business at Four Limited Parkway, Reynoldsburg, Ohio 43068.

12. Plaintiff alleges on information and belief that IB US Retail Holdings, Inc. ("IB US") is the corporate parent and sole managing member of Victoria's Secret Stores Brand Management, LLC. IB US at all relevant times was, a corporation organized under the laws of the State of Delaware and authorized to conduct business in California. Victoria's Secret maintains its principal place of business at Four Limited Parkway, Reynoldsburg, Ohio 43068.

13. Defendant conducts business under the Victoria's Secret brand and advertises, markets, promotes, and sells its products, including perfumes and other beauty products, throughout the United States, including California. Victoria's Secret perfumes are marketed and sold worldwide through the brand's domestic and international retail and online channels. Defendant uses digital and social-media platforms, including Instagram, to promote those products.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Plaintiff Sydney Roper is, and at all relevant times was, a citizen of the State of California.

16. Plaintiff is informed and believes that Defendant's sole managing member is IB US Retail Holdings, Inc., a corporation incorporated in Delaware with its principal place of business in Ohio.

17. A limited liability company takes the citizenship of its members. On the membership and citizenship allegations above, Defendant is a citizen of Delaware and Ohio and is diverse from Plaintiff, a California citizen.

18. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks actual damages, profits attributable to the unauthorized use that are not included in actual damages, and recoverable statutory attorneys' fees. Plaintiff's $2,500 additional-usage demand did not fix the amount of attributable profits or the total relief sought in this action. Plaintiff alleges that the recoverable amounts in the aggregate exceed the jurisdictional minimum.

19. This Court has specific personal jurisdiction over Defendant because the challenged campaign arose from a modeling booking negotiated through Plaintiff's agency in Los Angeles, California, and modeling services Plaintiff performed in California for Defendant's campaign. Defendant accepted and used those services and the resulting campaign materials. Plaintiff's claims arise out of that California-connected transaction and the alleged publication beyond its agreed usage limits.

20. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including negotiation of the modeling booking and its

usage restrictions through Plaintiff's agency in Los Angeles. The dispute concerns the scope of the rights obtained in that booking and Defendant's use of the resulting materials.

## FACTUAL ALLEGATIONS

21. Plaintiff is a professional model whose photograph, likeness, and identity possess substantial commercial value arising from her modeling work and appearances in national and international advertising campaigns. For approximately six years, she modeled for Peter Millar and its G/FORE brand, serving as a principal recurring model and becoming one of G/FORE's recognizable visual representatives.

22. Plaintiff is informed and believes that Richemont prominently features her photograph on its corporate website in its presentation of G/FORE. Her selection as a visual representative of the brand reflects the commercial value of her recognizable image. Her established standing explains why she negotiates identifiable facial appearances separately from unrecognizable parts-model work.

23. A license to appear without being recognizable allows Plaintiff to provide particular modeling services while retaining control over recognizable brand associations. Using her recognizable face defeats that limitation and takes a commercially distinct use for which separate permission and compensation are required.

24. Plaintiff's agency, Closeup Models Agency, negotiated her booking for Defendant's FA26 VSI | JOYRIDE campaign in Los Angeles, and Plaintiff performed the modeling shoot in California. Defendant's campaign deal memo identifies an effective date of April 2, 2026 and a contemplated production day of April 3, 2026 (the "Campaign Deal Memo"). A copy is attached as Exhibit A. Plaintiff did not personally sign the Campaign Deal Memo or the accompanying inducement; the agency supplied the signatures appearing on those documents.

25. Plaintiff alleges that she agreed to the limited modeling engagement through her agency. She does not concede that the agency's signatures establish her personal assent to every provision of

Defendant's form, including its arbitration provision. The scope of any authority to bind Plaintiff to those provisions is distinct from the agreed limitation on the use of her likeness.

26. The Campaign Deal Memo expressly identifies Plaintiff as an "Unrecognizable/ Parts Model." Plaintiff alleges that this specific designation limits the appearance Defendant was authorized to publish.

27. The agency's Non-Union Deal Memo, dated March 20, 2026, identifies an April 3, 2026 booking for Victoria's Secret at $1,000 for four hours plus 20 percent. It selects hands, legs, lips, and abs/torso; the "Face" and "Eyes" boxes are not selected. A copy is attached as Exhibit B.

28. Defendant's representative Kyle Kinnare confirmed the intended scope in an email to Plaintiff's agency: "all will remain unrecognizable." He identified "Partial face (less than 30%)," "Nose," "Lips," and "hands/arm." A copy is attached as Exhibit C. This express confirmation is consistent with the Campaign Deal Memo's designation of Plaintiff as an unrecognizable parts model.

29. The parties therefore understood that Plaintiff's participation was as an unrecognizable parts model and that any permitted appearance of her face would be limited to less than 30 percent, together with the specifically identified portions of her likeness. Defendant did not obtain an agreement permitting Plaintiff's full or substantially recognizable face to appear in the Campaign.

30. The Campaign Deal Memo describes six months of worldwide advertising usage, additional specified wind-down and post-term uses, and broad rights to exploit the campaign materials. Plaintiff alleges that those provisions describe the media, duration, and permitted exploitation of materials within the agreed unrecognizable parts-model engagement; they do not nullify the specific designation or authorize the recognizable facial appearance challenged here. Plaintiff relies on Defendant's email as confirmation of the meaning and scope of that designation.

31. Defendant featured the challenged video on its Victoria's Secret Instagram account to promote perfume. Victoria's Secret's worldwide perfume business gives its product advertising commercial significance beyond a single local market. Plaintiff's recognizable likeness was deliberately used in the perfume's presentation to attract consumer attention and promote purchases. Plaintiff seeks only revenue and profits causally attributable to the challenged use, not all worldwide perfume sales or unrelated revenues of affiliated companies.

**A. Unauthorized Use**

32. Defendant subsequently produced and published Campaign content incorporating Plaintiff's likeness. Among that content was an Instagram video promoting Defendant's perfume.

33. Defendant controlled the selection and publication of the Campaign content it used to promote its perfume. The limitations were known before publication because Defendant had negotiated them and its representative had expressly confirmed that Plaintiff would remain unrecognizable.

34. The Instagram video depicted substantially all of Plaintiff's face, which Plaintiff estimates at approximately 95 percent, rather than less than 30 percent. At a point in the video, one eye, her nose, lips, and other facial features are visible. Partial shadow did not prevent recognition. Plaintiff was identifiable to persons familiar with her appearance and professional modeling work.

35. Screenshots of the challenged video are attached as Exhibit D. Plaintiff's approximately 95 percent estimate describes the extent of facial depiction; independently of that estimate, Plaintiff alleges that the visible features made her recognizable in violation of the agreed unrecognizability requirement.

36. The appearance of Plaintiff's face in the Instagram video therefore exceeded the agreed limitation that Plaintiff remain unrecognizable and that any partial facial use be less than 30 percent.

The published content used Plaintiff's recognizable facial features in a manner that Defendant had not obtained authorization to use.

37. Plaintiff discovered Defendant's use of her likeness in the Instagram video and notified Defendant that the use exceeded the agreed-upon scope of her authorization.

**B. Plaintiff's Discovery and Defendant's Response**

38. On September 4, 2026, at 1:30 p.m., Plaintiff's agency emailed Defendant's representative, copying another Victoria's Secret representative, and identified the challenged Instagram post. The agency reported that Plaintiff was fully recognizable despite being booked as an unrecognizable model with less than 30 percent facial use. It demanded "an additional recognizable talent fee of $2500 +20%" and stated: "In the future, this needs to be flagged before posting." The additional agency fee was $500, for a total demand of $3,000. (Exhibit E.)

39. After the September 4 demand, Defendant did not respond to the agency's email and removed the linked Instagram video. Defendant paid no additional compensation for the expanded use and offered no apology. Plaintiff alleges nonresponse and removal, not an express written rejection or an admission of liability.

40. By the time Defendant removed the Instagram video, Defendant had already published Plaintiff's likeness in connection with the commercial promotion of its perfume. Defendant therefore obtained the benefit of the unauthorized use before Plaintiff discovered the use and asserted her rights.

41. Removal did not retroactively supply consent or compensate Plaintiff for the commercial value of the expanded use. The unanswered demand did not create a new license, an agreed additional fee, or an admission by Defendant. Plaintiff seeks relief for the use that had already occurred.

**C. Unequal Resources and the Burden of Enforcement**

42. Defendant is a sophisticated commercial advertiser with substantially greater resources than Plaintiff to produce, review, publish, and license advertising. It controlled the advertisement at issue and had access to its own publication and campaign records. Plaintiff, an individual model, had to identify the excess use and seek payment after publication.

43. The agency's involvement did not eliminate that disparity. Even with professional representation, Plaintiff received no response or additional compensation after her agency's demand. Defendant could remove its post unilaterally while leaving Plaintiff to bear the effort and expense of pursuing compensation for the completed use.

44. On these facts, Plaintiff alleges that Defendant took advantage of the imbalance in practical enforcement power: it obtained the advertising benefit of a recognizable model's face, left the agency's compensation demand unanswered, and removed the post without paying for the expanded use. Plaintiff's professional success did not give her control over Defendant's publishing decisions or the resources Defendant possessed.

45. Defendant's failure to apologize is part of its response alleged here. Plaintiff seeks relief for the unauthorized use, contractual breach, and resulting injury, rather than a separate award for the absence of an apology.

46. Plaintiff's agency does not ordinarily book her high-profile, recognizable modeling campaigns. Its $2,500 demand did not reflect Plaintiff's customary compensation for a recognizable campaign of the nature and scope of this Victoria's Secret perfume advertisement. Plaintiff suffered economic injury through the uncompensated recognizable use and loss of its fair market licensing value. The demand did not establish or cap that value. Plaintiff will establish damages through her comparable recognizable-campaign bookings, licensing evidence, and the scope, duration, media,

and reach of the actual use. Any additional lost opportunities or diminution in value must be causally established, without duplicative recovery.

**FIRST CAUSE OF ACTION**

**(Violation of California Civil Code § 3344)**

**Unauthorized Commercial Use of Photograph and Likeness**

47. Plaintiff incorporates paragraphs 1 through 46 as though fully set forth herein.

48. California Civil Code § 3344(a)(1) imposes liability for the knowing use of another person's photograph or likeness in connection with products, merchandise, or goods, or to advertise, sell, or solicit purchases of products, merchandise, goods, or services, when the person depicted did not give advance consent.

49. Plaintiff earns her livelihood from modeling and licensing her likeness for defined uses. Her established G/FORE work and alleged prominent appearance on Richemont's website demonstrate the commercial significance of her recognizable face. The value of an identifiable facial appearance is distinct from the limited, unrecognizable parts-model use Defendant obtained.

50. Defendant used the video depicting Plaintiff (the "Challenged Video") in an Instagram advertisement for its perfume. The challenged post is identified by the URL in Exhibit E, and still images of the video are attached as Exhibit D. The images depict Plaintiff holding the perfume product as part of its commercial presentation.

51. Defendant knowingly selected and published the Challenged Video on the Victoria's Secret Instagram account to promote its perfume. This was Defendant's deliberate use of the model it had engaged for its own campaign, not an incidental depiction in third-party content.

52. Defendant's use of the Challenged Video was directly connected to the commercial promotion and sale of its perfume.

53. Plaintiff had authorized Defendant to use specified portions of her likeness in connection with the Campaign, but that authorization was subject to express limitations concerning the portions of Plaintiff's body that could be used and the extent to which her face could appear.

54. The Challenged Video exceeded those limits by depicting substantially all of Plaintiff's face, estimated by Plaintiff at approximately 95 percent, and making her recognizable through her visible facial features notwithstanding partial shadow. The use violated both the less-than-30-percent restriction and the requirement that she remain unrecognizable.

55. Plaintiff did not consent, personally or through her agency, to the recognizable facial appearance published in the Challenged Video. Her authorization extended only to the agreed unrecognizable parts-model use. Neither participation in the shoot nor permission to create campaign materials authorized publication beyond that limitation.

56. The additional recognizable facial use was neither separately authorized nor compensated. Plaintiff's claim rests on the use beyond her consent; the later failure to respond to the demand or pay additional compensation is not, by itself, the act of misappropriation.

57. Defendant knew the scope of Plaintiff's consent because it negotiated the parts-model engagement and expressly confirmed the unrecognizability requirement and facial-use limit. Defendant nevertheless selected and published the Challenged Video containing the expanded, recognizable facial appearance. Its knowledge of the negotiated restrictions and its deliberate commercial publication support the allegation of knowing unauthorized use.

58. Defendant obtained commercial benefits from the challenged use, including advertising value, customer attention, goodwill, and other benefits associated with the promotion and sale of its perfume.

59. The Challenged Video constitutes a "photograph" within the meaning of California Civil Code § 3344(b), which expressly includes any photograph or photographic reproduction, whether

still or moving, or any videotape or live television transmission, of any person, such that the person is readily identifiable. Plaintiff is readily identifiable in the Challenged Video.

60. Plaintiff is readily identifiable: a person viewing the Challenged Video with the naked eye can reasonably determine that she is the person depicted. Her visible facial features identify her notwithstanding partial shadow, independently of the precise percentage of her face shown.

61. Plaintiff is depicted individually and prominently in the Challenged Video and not merely as an incidental member of a crowd or other definable group.

62. Plaintiff was a model specifically engaged to appear in the Campaign; her image was an intended advertising component. The employee-incidental-use presumption in Civil Code § 3344(c) does not excuse the challenged use.

63. The challenged use was not connected with news, public affairs, a sports broadcast or account, or a political campaign. Accordingly, the exception set forth in California Civil Code § 3344(d) does not apply.

64. Plaintiff's likeness was directly connected to the perfume advertisement: it formed part of the product's commercial presentation and was used to attract attention and promote purchases. This was product advertising, not merely an appearance in material that happened to contain advertising.

65. Defendant's publication was a substantial factor in causing Plaintiff's economic harm. It commercially exploited the recognizable facial appearance that she had reserved from the booking, depriving her of the fair market value of that expanded use and her control over that commercial association. Plaintiff seeks damages for the unauthorized use actually made, including any additional impairment of licensing value established by competent evidence, without duplicating the same loss under different descriptions.

66. Plaintiff seeks the greater of $750 or her actual damages, plus profits attributable to the unauthorized use and not included in actual damages, under Civil Code § 3344(a)(1). The perfume

advertisement directly connected the use to the product promoted. Attributable revenue and profits will be established through campaign and sales evidence. The agency's $2,500 demand was not an agreed recognizable-use price, Plaintiff's customary rate for this kind of campaign, or a cap on recovery. Fair market licensing value will be established independently of that demand; Plaintiff does not seek all of Defendant's worldwide revenue or profits.

67. If Plaintiff prevails on this claim, she seeks reasonable attorneys' fees and costs under Civil Code § 3344(a)(1).

**SECOND CAUSE OF ACTION**

**(Violation of California Common Law Right of Publicity)**

**Common Law Misappropriation of Name and Likeness**

68. Plaintiff incorporates paragraphs 1 through 67 as though fully set forth herein.

69. California's common-law right of publicity requires a plaintiff to establish: (1) use of the plaintiff's identity; (2) appropriation of the plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001).

70. This claim concerns the exploitation of Plaintiff's identity to promote perfume. Plaintiff does not claim ownership of the copyright in the campaign video or sue merely to control distribution of a copyrighted work. The invasion alleged is the use of her recognizable likeness in product advertising beyond the permission she granted.

71. Plaintiff's likeness has commercial value developed through her professional career, including approximately six years as a principal recurring G/FORE model and her role as a recognizable face of that brand. The challenged appropriation used the identifiable professional image that the parts-model agreement had reserved from Defendant's authorized use.

72. The Challenged Video depicts Plaintiff individually and recognizably, including substantially all of her face, estimated at approximately 95 percent. Her visible eye, nose, lips, and facial features identify her notwithstanding partial shadow.

73. Defendant deliberately selected and published the Challenged Video on its Victoria's Secret Instagram account as an advertisement for its perfume, using Plaintiff's recognizable facial appearance in the product presentation shown in Exhibit D.

74. Defendant appropriated Plaintiff's identity for its commercial advantage by using her recognizable image to attract customers, promote its perfume, and enhance the presentation of its product without securing the additional rights required for that appearance.

75. Plaintiff did not consent to the challenged recognizable facial use. Her permission was limited to appearing as an "Unrecognizable/Parts Model," consistent with Defendant's confirmation that the uses would "remain unrecognizable" and any partial facial appearance would be less than 30 percent. Neither Plaintiff nor her agency expanded that permission to authorize the published recognizable appearance.

76. Defendant's use was a substantial factor in causing Plaintiff's harm because it took the commercial value of a recognizable facial appearance excluded from her authorized booking. Plaintiff lost the fair market licensing value of the expanded use and control over the commercial association actually made. Any additional diminution in licensing value or lost opportunity is sought only to the extent established by causally connected evidence, without duplicate recovery.

77. Defendant received advertising and promotional benefits from the unauthorized use. Its subsequent removal of the video did not restore the licensing value already taken or eliminate the injury caused by the completed appropriation. Plaintiff seeks compensatory damages according to proof, without duplicating amounts recovered under the other causes of action.

## THIRD CAUSE OF ACTION

### Breach of Contract

78. Plaintiff incorporates paragraphs 1 through 45 as though fully set forth herein. She asserts this claim to enforce the limited modeling agreement alleged below. Her statutory and common-law claims are also pleaded in the alternative if she cannot enforce that agreement; each remains subject to proof that the challenged use exceeded her consent.

79. Plaintiff, through Closeup Models Agency acting as her booking agent, agreed to furnish modeling services and limited likeness rights for Defendant's FA26 VSI | JOYRIDE campaign in exchange for $1,000 for four hours plus a 20 percent agency fee and compliance with the unrecognizable parts-model restriction. Defendant accepted and used her modeling services. Exhibits A through C evidence the booking and the agreed usage scope (the "Agreement"). Plaintiff seeks enforcement of the restriction negotiated for her own services and likeness through her agency.

80. Exhibit A specifically identifies Plaintiff as an "Unrecognizable/Parts Model." Exhibit B selects hands, legs, lips, and abs/torso but does not select the face or eyes. Defendant's confirmation in Exhibit C states that all appearances will remain unrecognizable and limits partial facial use to less than 30 percent.

81. The unrecognizable-model designation and confirmed facial-use limit were material to the exchange: Plaintiff provided a limited appearance while retaining control over recognizable advertising associations. Plaintiff alleges that the specific designation restricts the scope of the general likeness grant, and that Exhibit C explains that designation. The claimed breach does not depend on a right to approve the final edit or on expiration of the permitted media or usage term.

82. Plaintiff furnished the modeling services used to create Defendant's campaign materials and substantially performed her obligations under the limited engagement. The agreed restriction applied when Defendant published those materials; Defendant's obligation to keep the appearance within the

authorized scope was not conditioned on Plaintiff's later discovery of the advertisement or a demand for additional payment.

83. Defendant materially breached the usage restriction by selecting and publishing Plaintiff's recognizable facial appearance in its perfume advertisement. The breach occurred upon that publication beyond the agreed scope.

84. Defendant published a recognizable facial appearance showing substantially all of Plaintiff's face, estimated by Plaintiff at approximately 95 percent, instead of the agreed unrecognizable appearance with less than 30 percent facial use. That departure deprived Plaintiff of the benefit of the negotiated limitation on the commercial use of her identity.

85. Defendant neither obtained additional consent nor paid for the expanded use. After the agency demanded an additional $2,500 usage fee and a $500 agency fee (20 percent of $2,500), Defendant did not respond and removed the linked video. The breach alleged is publication beyond the agreed scope; the unanswered demand did not itself create a new contract.

86. Defendant's breach caused Plaintiff to lose the benefit of the negotiated usage restriction. Direct damages include the value of the additional recognizable facial use, assessed through comparable bookings and licensing evidence appropriate to the campaign's actual scope, media, duration, and reach. The $2,500 agency demand did not reflect Plaintiff's customary compensation for a recognizable campaign of this kind and was neither an accepted modification nor a liquidated-damages term. Plaintiff seeks the value proved, not a recovery capped by that demand. The separate $500 agency fee is sought only insofar as Plaintiff establishes her own entitlement or liability to pay it, without duplication. Removal did not restore the benefit already lost.

**PRAYER FOR RELIEF**

87. WHEREFORE, Plaintiff Sydney Roper respectfully prays for judgment against Defendant as follows:

a. Actual and compensatory damages according to proof for the unauthorized use of Plaintiff's likeness under California common law and for breach of contract, without duplicative recovery;

b. Under Civil Code § 3344(a)(1), the greater of $750 or actual damages caused by the unauthorized use, without duplicating damages awarded on another claim;

c. Profits attributable to the unauthorized use and not included in actual damages, under Civil Code § 3344(a)(1);

d. Prejudgment interest as permitted by law;

e. Reasonable attorneys' fees, pursuant to California Civil Code section 3344(a)(1);

f. Recoverable costs of suit, pursuant to California Civil Code section 3344(a)(1);

g. Such other and further legal or equitable relief as the Court deems just and proper, pursuant to the causes of action alleged and the Court's lawful authority.

**DEMAND FOR JURY TRIAL**

88. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 29, 2026

LAW OFFICES OF PERRY C. WANDER
*By: /s/Perry C. Wander*
Perry C. Wander, Esq.
Attorney for Plaintiff

# EXHIBIT A

**VS CAMPAIGN DEAL MEMO**

| | |
|---|---|
| **Effective Date** | As of April 2nd, 2026 |
| **VS Party** | Victoria's Secret Stores Brand Management, LLC ("**VS**") |
| **Talent** | Sydney Roper (Unrecognizable/ Parts Model) |
| **Lender Address** | [Insert Address] |
| **Lender** | [Please Provide] ("**Lender**") |
| **Agency or Management** | Closeup Models Agency |
| **Services and Usage Term** | This Deal Memo ("**Agreement**") shall commence as of the Effective Date and shall continue, unless earlier terminated, through the date that is six (6) months after the first public exploitation of the Materials (defined below) (the "**Term**"). Usage is 6 months worldwide (from first public insertion in the particular jurisdiction) across in-store, print, paid digital media, digital (includes site, internet, sales channels, social, email and promoted posts), corporate collateral, OOH and 6 months following the Term so called "Wind-down Imagery," i.e., non-promotional, photographs featuring Talent, incorporated into store décor (inclusive of internal and travel retail). Upon expiration of the Term, VS shall have standard post-term usage rights of the Materials, including corporate communications, or archival and historical retrospective purpose in perpetuity and without the payment of any further compensation. |
| **Campaign** | FA26 VSI \| JOYRIDE (the "**Campaign**") |
| **Services and Deliverables** | Lender is being engaged to provide the services of Talent as an independent contractor, in connection with the Campaign, as follows:<br>Production Day: Lender shall cause Talent to participate in one (1) production day, on a work-made-for-hire basis, which is currently intended to take place on April 3rd, 2026. The production day will be used to photograph and shoot still images and video footage (including BTS images and footage) necessary to create all of the assets for the Campaign and shall be up to ten (10) hours in length, from all to lease, inclusive of hair, makeup, meals and reasonable breaks, and exclusive of travel. Talent will be dressed and styled in an assortment of VS product subject to VS discretion or any Talent exclusivity restrictions for which VS has been notified. VS shall be responsible for and will provide Talent with hair and makeup (provided that such makeup Talents and hairstylists shall be chosen by VS and local to the site of the applicable shoot). If necessary, VS shall be responsible and will provide Talent with reasonable travel and accommodations subject to VS's prior approval of such expenses; VS shall only be responsible for expenses that are previously approved and travel and accommodation expenses for Talent, and not any companion, personnel, or other individual unless VS provides prior approval. If a force majeure (e.g., labor strike) impedes the production day, the parties will reschedule the production day. |
| **License and Materials** | Talent acknowledges and agrees that all photographs, digital images, video recordings, statements (whether oral or written), and other creative output resulting from the services (collectively, "**Materials**") are the property of VS or its authorized agents. Talent hereby grants VS the royalty-free right and license to reproduce, publish, distribute, display, transmit, modify, adapt, broadcast, perform, create derivative works from, and otherwise use and exploit Talent's name, portrait, picture, voice, likeness, and biographical information (including hometown, professional affiliation and state) (collectively "**Talent ID Materials**") in connection with the Materials, that it desires to use in connection with the exercise of VS's rights under this Agreement, for the purpose of advertising, marketing and promoting VS and VS products (collectively, the "**License**").<br><br>Talent acknowledges and agrees that none of the Materials need to be submitted to Talent for any approval and that VS shall be without liability to |

CONFIDENTIAL

| | |
|---|---|
| | Talent for any distortion or illusionary effect resulting from the publication of the Materials as authorized herein. Talent warrants and represents that this Agreement does not in any way conflict with any existing commitment of Talent's, that nothing herein will constitute an obligation on the part of VS to make use of any of the rights set forth herein. |
| **Usage Fee** | As full and complete consideration for all rights and services provided by Lender and Talent hereunder, Lender shall receive USD $1,000 plus 20% agency or management fee (4 Hours). Lender shall invoice VS and payments shall be made on a Net60 basis (subject to Lender and Talent submitting all required tax and immigration related paperwork). Lender has sole responsibility and liability for any and all taxes, contributions, penalties, interest or other sums arising out of the compensation and/or any other amounts and/or expenses paid pursuant to this Agreement. Subject to Agency or Management's receipt of the Fees, Agency or Management agrees to pay Lender and Talent all monies owed to Talent in respect of the fees and agrees to comply with any and all wage and hour laws, and Agency shall indemnify VS from and against any claims by Talent in respect of such fees. |
| **Dispute Resolution** | This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its choice of law provisions. If a dispute arises out of or related to this Agreement, or a breach thereof that cannot be settled by the parties through direct discussions, such dispute shall be settled by arbitration before a single arbitrator who shall be an attorney in New York, New York, U.S.A., and administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, located at https://adr.org/sites/default/files/Commercial_Rules_Web.pdf. Any provisional or equitable remedy which would be available from a court of law shall be available from the arbitrator to the parties in such proceeding. Judgment upon the award of the arbitrator may be enforced in any court having jurisdiction thereof. The parties hereby consent to: (i) the jurisdiction of the federal or state courts sitting or located in New York, New York, U.S.A., for any action: (a) to compel arbitration, (b) to enforce the award of the arbitrator, or (c) prior to the appointment and confirmation of the arbitrator, for temporary, interim or provisional equitable remedies; and (ii) service of process in any such action by registered mail, return receipt requested, or by any other means provided by law.<br><br>If any portion of this Agreement is held by a court or arbitrator of competent jurisdiction to be unenforceable or invalid, such provision or provisions shall be construed by the appropriate judicial body by limiting and reducing it or them but only to the extent necessary to conform to legal requirements, or, if incapable of such construction, shall be stricken entirely and the balance shall continue in full force and effect. Notwithstanding anything contained herein to the contrary, in the event of any breach or alleged breach of this Agreement by VS, Lender's and Talent's sole right will be to seek the recovery of money damages, and in no event shall Lender or Talent have the right to terminate or rescind this Agreement or to obtain injunctive or other equitable relief or to enjoin or restrain or otherwise interfere with the production, distribution, exhibition or other exploitation of the Campaign or the Materials, or the exploitation of any other rights granted herein. |
| **SAG-AFTRA** | If the Services hereunder fall within the jurisdiction of SAG/AFTRA, VS will engage a third party signatory and will also make any and all payments required by SAG/AFTRA, including, without limitation, payment on Talent's behalf directly to SAG/AFTRA for the contribution to the Pension and Health Plan required to be paid pursuant to the applicable SAG/AFTRA agreement. All such pension amounts will be paid within 30 days of an applicable payment of Fees. For the avoidance of doubt, SAG/AFTRA payment obligations arising out of the Services shall be in addition to the Fees payable to Lender |

CONFIDENTIAL

| | |
|---|---|
| | hereunder. |
| **No Assignment** | The obligations of Lender and Talent hereunder are personal in nature and this Agreement may not be assigned, subcontracted or delegated for performance by Lender or Talent, in whole or in part, by operation of law or otherwise, to any other party without the prior, written agreement of VS. Any attempted or purported assignment or delegation in violation of this provision shall be deemed null and void and of no force and effect. |
| **Non-Disparagement** | During the Term, the parties shall refrain from making any negative or derogatory comments about one another. Lender and Talent shall not, at any time during the Term, publicly defame or disparage VS in any manner. VS and any executives of VS shall not, at any time during the Term, publicly defame or disparage Lender and/or Talent in any manner. |

This Agreement shall constitute the sole, entire and binding agreement between the parties with respect to the subject matter herein, and it supersedes in their entirety all prior understandings and agreements between the parties relating to the subject matter hereof. This Agreement may be executed in any number of copies by the parties hereto in several counterparts, and when each party hereto has signed and delivered at least one such counterpart to the other party hereto, each counterpart will be deemed an original and when taken together will constitute one and the same agreement, which will be binding and effective as to all parties hereto. A computerized, scanned, APP-based, facsimile, photocopy or other electronic signature shall constitute an original signature.

Victoria's Secret Stores Brand Management, LLC

By: ______________________________
Print Name: _______________________
Title: ____________________________
Date:_____________________________

(Lender)

By:________________________________
Print Name:_______________
Title:______________________________
Date: _____________________________

CONFIDENTIAL

# INDUCEMENT

As a material inducement for Victoria's Secret Stores Brand Management, LLC ("**VS**") to execute the above agreement (the "**Agreement**"), the undersigned ("**Talent**") acknowledges reading and approving the Agreement, and she agrees to be personally bound by the Agreement. Talent hereby guarantees the truth, effectiveness and performance of all the agreements, undertakings, representations, warranties and indemnities made in the Agreement and agrees to be jointly and severally liable directly to VS for any material breach thereof, as if Talent was an executing party to the Agreement. Talent acknowledges that she is not a third-party beneficiary of the Agreement and agrees to look solely to ("**Lender**") for any compensation that may be due by virtue of the Agreement or the services or grant of rights set forth therein. Subject to agency or management's receipt of the fees from VS, Talent acknowledges and agrees that its agency or management is solely response to pay Lender and Talent all monies owed to Talent in respect of the fees and agency shall indemnify VS from and against any claims by Talent in respect of such fees. This inducement shall inure to the benefit of VS, and its successors, licensees and assigns. In the event of a material breach of the Agreement by Lender, VS may proceed directly against Talent without first having to resort to, or exhaust, its rights and remedies against Lender.

**ACCEPTED AND AGREED:**

____________________________________

CONFIDENTIAL

**EXHIBIT B**

Date 03/20/26

# Closeup Models
# Non-Union Deal Memo

- Please acknowledge the job specifications herein by checking the box at the bottom of this form and then save and e-mail this form back to your point of contact to ensure that your talent(s) are officially booked.
- Please note that rates and talent contact information are included in the details below. We would like to request that we receive a signed and acknowledged deal memo and all releases prior to our models arrival on set.
- Please forward all paperwork and/or releases to Closeup Models prior to actual session. An agent will sign necessary documents prior to booking day. No paperwork should be presented to our talent on the day of the session.
- Please include Closeup Models when sending out your call sheet.

*This is an interactive fillable PDF form. All fields are required.*

Job Description

Victoria's Secret

Body Parts Booked

☑ Hands ☐ Feet ☐ Body Double ☑ Legs ☐ Eyes ☑ Lips ☐ Face ☑ Abs/Torso

## Client Contact Info

Name

Kyle kinnare

E-mail

kkinare@victoria.com

Phone

Billing Address

Billing E-mail Address

☐ *If info already supplied in call sheet, please check here.*

Talent Contact Info

Sydney Roper: sydneyroper@gmail.com ; 310-613-0637

Booking Date

04/03/26

Booking Address

call sheet

Call Time

call sheet

*We do not bill for the first 15mins into the 1st overtime hour. Thereafter, we will bill in full one hour increments. The model's lunch break will be considered part of the working hours and is included in the total time worked for the day.*

Rates

$1000/4hours + 20%

Overtime

5455 WILSHIRE BLVD SUITE 1608
LOS ANGELES CA 90036
O (323) 746 5121

CLOSEUPMODELSAGENCY.COM
INFO@CLOSEUPMODELSAGENCY.COM

Usage, Buyout, Other Costs

| |
|---|
| |

Agency Fee

20%

Reimbursed Expenses

☐ Other ______________________

☐ Manicure $35 ☐ Waxing $85 ☐ Pedicure $45

☐ Manicure / Pedicure $90

☐ Travel *(mileage)* $.70/mi ______________________

______________________

Terms of Payment
*(please select one)*

☐ Net 15 Days

☑ Net 30 Days

☐ Upon Receipt

CLOSEUP MODELS

**Accounts not paid within 30 days are subject to a 15% monthly finance charge.**

Email call sheet to info@closeupmodelsagency.com.
Please note that Closeup Models will not forward the call sheet to the talent unless requested.
If Closeup Models is not invoicing for the talent, but instead the talent is being placed on a timecard, then Closeup Models requires:

1. Timecard must **state somewhere on the document** that the check will be mailed in

   c/o Closeup Models and Talent LLC, 5455 Wilshire Blvd Suite 1608, Los Angeles CA 90036.

   Address for Billing ______________________

   ______________________

   Contact ______________________

2. Please email a copy of the timecard to info@closeupmodelsagency.com.

Unless otherwise specified our hand and/or foot model will arive with Ballet Slippers, Mademoiselle or Hi Maintenance (a color used on darker skin tones).

- These colors can be viewed at www.essie.com (click for link).
- Men arrive with buffed flat nail beds.
- Additionally, all Closeup Models talent will arrive on set with a nail kit.
- Body doubles will arrive completely waxed including legs, arms, and bikini line.
- Hand models will bring dark and white short and long sleeved shirts.
- Body Doubles will arrive w/nude g-strings, robes and slippers so no lines will be evident.

Additional brings and/or required nail or toenail color, waxing specifications, etc. *(client specified)*

| |
|---|
| |

5455 WILSHIRE BLVD SUITE 1608
LOS ANGELES CA 90036
O (323) 746 5121

CLOSEUPMODELSAGENCY.COM
INFO@CLOSEUPMODELSAGENCY.COM

CLOSEUP MODELS

## Cancellation Clause

- **Full Fee Cancellation** on any jobs cancelled within 2 business days of the shoot date.
- **Full Fee Cancellation** on any multiple day jobs cancelled within 5 business days of the first shoot date.
- **Conventions**: If booking is a convention a 2 week advanced cancellation is required or you are subject to a 100% cancellation fee (for 1/2 of the total days booked).

### Release *(client specified)*

**This release is not valid until payment is received in full from the client.**

### Agency Contact

*Closeup Models*
*(323) 746 5121 (hours 9:30am – 6pm PT)*
*info@closeupmodelsagency.com*

## Contract Signature Policy

Any and all releases and/or other contracts where a talent signature is required shall be emailed to Closeup Models. We would like to review these documents prior to talent's arrival on set. Closeup Models holds power of attorney and therefore, will review and sign all paperwork on behalf of our talent.

Please review this information to ensure its accuracy. Please call us should you have any questions. We will not be able to confirm this booking until we have received this returned document with the below checkbox, checked with authorized party name and date printed below.

Please check the following box if the terms and conditions are acceptable.

☐ I agree to the terms and conditions stated herein.

Name of Authorized Party for Production

Date

**Contact Information**

(323) 746 5121
info@closeupmodelsagency.com
closeupmodelsagency.com
**Closeup Models**
5455 Wilshire Blvd. Suite 1608
Los Angeles CA 90036

5455 WILSHIRE BLVD SUITE 1608
LOS ANGELES CA 90036
O (323) 746 5121

CLOSEUPMODELSAGENCY.COM
INFO@CLOSEUPMODELSAGENCY.COM

# EXHIBIT C

K

**Kinnare, Kyle** <KKINNARE@victoria.com>
to me, Chelsey

Thanks Claire!

Wanted to breakdown the below: all will remain unrecognizable

The below will be in a shot:

Partial face (less than 30%)

Nose

Lips

hands/arm

# EXHIBIT D




1/3



# EXHIBIT E

---------- Forwarded message ---------
From: **Claire Applewood** <claire@closeupmodelsagency.com>
Date: Fri, Sep 4, 2026 at 1:30 PM
Subject: Re: [External] NonUnion_Deal_Memo_Victoria'sSecret_04_03_26
To: Kinnare, Kyle <KKINNARE@victoria.com>
Cc: Permar, Chelsey <CPermar@victoria.com>

Hi Kyle,

Hope all is well. We have a problem - Sydney just found this post on Victoria Secret's instagram (linked below) where she is fully recognizable. She was booked as an unrecognizable model which means only less than 30% of her face is to be shown. You need to let your client know they need to pay an additional recognizable talent fee of $2500 +20%. In the future, this needs to be flagged before posting.

https://www.instagram.com/p/DcbIBZZlSVO/

Thanks,

**Claire Applewood**
*Executive Agent*
(323) 746-5121 | (510) 338-2928
US Austin / Atlanta / Chicago / Los Angeles / Miami / New York
Mexico Mexico City